UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SALLY MAIN | CIVIL ACTION |
| VERSUS | NO: 17-1398 |
| TULANE UNIVERSITY | SECTION: "A" (3) |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 31)** filed by defendant, The Administrators of the Tulane Educational Fund ("Tulane").[1] Plaintiff Sally Main opposes the motion. The motion, noticed for submission on April 18, 2018, is before the Court on the briefs without oral argument.[2] For the reasons that follow, the motion is GRANTED.

**I. BACKGROUND**

This is an action brought under federal law by plaintiff Sally Main for age (60) and disability discrimination (post-traumatic stress disorder or PTSD) against her former

---

[1] Named as Tulane University in the Complaint.

[2] Tulane's motion for summary judgment was noticed for submission on January 10, 2018, but the Court granted Plaintiff's request to conduct discovery in order to oppose the motion. (Rec. Doc. 45, Minute Entry 1/24/18). The Court reset Tulane's motion for submission on April 18, 2018, to accommodate this change to the scheduling order. (*Id.*).

employer, Tulane.[3] Plaintiff began working for Tulane in 1982 as a Senior Curator for the Newcomb Art Gallery on its New Orleans campus. (Rec. Doc. 1, Complaint ¶ 5). Tulane eliminated Plaintiff's position effective July 30, 2015. (Rec. Doc. 31-6, Termination letter 6/24/15). Plaintiff was advised that the decision to eliminate her position was the result of the restructuring of the Newcomb Art Gallery given an assessment received from the American Alliance of Museums. (*Id.*).

According to Plaintiff, her difficulties at Tulane began in August 2014 when Tulane hired Dr. Monica Ramirez-Montagut to be the new Director of the Newcomb Art Gallery.[4] Plaintiff noted at the outset that although pleasant enough, Ramirez-Montagut had a totalitarian, authoritative, and uncompromising attitude. (Rec. Doc. 31-2, Main deposition at 88). Plaintiff reported directly to Ramirez-Montagut. But in light of the holiday break in December 2014, and given that Plaintiff was on leave (FMLA and then non-FMLA) from January—June 2015, Ramirez-Montagut only supervised Plaintiff for four months. (Rec. Doc. 31-6, Ramirez-Montagut affidavit ¶ 15).

In support of her claims Plaintiff has identified certain "discriminatory" incidents that occurred during the time that she reported to Ramirez-Montagut. First, Anne Banos

---

[3] The Court refers to Tulane as Plaintiff's *former* employer only with respect to the curator position that forms the basis of this lawsuit. Plaintiff continues to work for Tulane as an adjunct professor in the art department.

[4] According to Tulane, Ramirez-Montagut was not the first art gallery supervisor with which Plaintiff experienced a contentious relationship during her employment. (Rec. Doc. 31-5, Banos affidavit ¶ 2). Anne Banos, former Chief of Staff and VP for Administrative Services, opined that from her personal observations, Plaintiff had difficulty taking instructions from her direct supervisors and often resisted instruction from them. (*Id.*). Plaintiff did testify at her deposition that she had contentious relationships with other Tulane co-workers at various times (Eric Neal, Tom Strider, Sally Kenney).

had contacted Plaintiff about putting some art work in the university's president's office. In the past Plaintiff had handled this type of request herself. Plaintiff began to solicit loaner pieces from museums not affiliated with Tulane. (Rec. Doc. 31-2, Main deposition at 119). Ramirez-Montagut found out about this project and demanded that Plaintiff send her Banos's email so that she could handle the request herself. In Plaintiff's opinion Ramirez-Montagut used art pieces that were non-functional.[5] (*Id.* at 119-20).

Next, there was an incident involving Sally Kenney and some artwork at the Newcomb dean's house. Kenney, who was Executive Director of the Newcomb College Institute, had contacted Plaintiff to remove the artwork in light of a pending demolition. When the demolition plans changed Kenney demanded to have the artwork replaced. When Plaintiff explained that Kenney would have to pay for additional help to do that, Kenny "lit into [Plaintiff], screaming that she wasn't paying for anything." (Rec. Doc. 31-2, Main deposition at 123). At this point Ramirez-Montagut got involved and decided to curate the art work herself. Kenney then complained that Plaintiff was rude to her.[6] (*Id.* at 124-25).

---

[5] In her affidavit, Banos explains that she understood why Ramirez-Montagut was irritated because Plaintiff had taken it upon herself to contact museums and galleries outside of Tulane without discussing this with Ramirez-Montagut before doing so. (Rec. Doc. 31-5, Banos affidavit ¶ 3). In the past pieces had been used from Newcomb's Art Gallery collection without seeking outside loaners. (*Id.*).

[6] Plaintiff identified Kenney as a person who had discriminated against her even though Kenney was not Plaintiff's supervisor. (Rec. Doc. 31-2, Main deposition at 30-31). Plaintiff describes Kenney as a "difficult person who when angered will spew venom everywhere." (*Id.* at 31). According to Plaintiff, Kenney had "gotten rid of 28 employees in seven years." (*Id.* at 32). It is unclear then why Plaintiff believes that Kenney's allegedly hostile treatment of her was discriminatory.

When asked what part of Ramirez-Montagut's behavior with respect to the Kenney incident was discriminatory, Plaintiff explained that Ramirez-Montagut did not understand people with PTSD. (Rec. Doc. 31-2, Main deposition at 125). "I think she thinks that you can speak to someone any way you want." (*Id.*). Plaintiff did not feel that treating others with respect was a priority for Ramirez-Montagut, and Plaintiff perceived that the aggressive, hostile, and nasty behavior just kept escalating.[7] (*Id.*).

Next, in late October 2014, Ramirez-Montagut instructed Plaintiff via email to place a Gene Koss sculpture in an outdoor breezeway. (Rec. Doc. 48-1, Main deposition Exh. 11). On November 10, 2014, Ramirez-Montagut sent another email to Plaintiff in which she reprimanded her for not following instructions and directions regarding the location of the Koss sculpture and other matters.[8] (*Id.*). Plaintiff responded to Ramirez-Montagut with a blistering email in which she defended herself regarding several incidents that she characterized as either not having happened or outside of her control.[9] (*Id.*). Plaintiff closed with, "I am concerned with your repeated use of hostile and disrespectful language in communicating with me. **Because of my PTSD diagnosis**, I'm asking that you desist from future written and verbal attacks and let's find a way of communicating where questions are asked instead of accusations thrown." (*Id.*)

---

[7] Again, the claimed disability in this case is PTSD. Plaintiff was diagnosed with PTSD following a traumatic incident that occurred in 2005 on Tulane's campus.

[8] Plaintiff characterizes this email from Ramirez-Montagut as "really ugly" but the Court does not find that assessment to be objectively accurate.(Rec. Doc. 31-2, Main deposition at 131; Rec. Doc. 48-1 Exh. 11 (email)).

[9] The tone of this email is particularly strident when considering that Plaintiff was communicating not with a mere coworker but with her supervisor.

(emphasis added).

When asked what part of Ramirez-Montagut's behavior with respect to this incident was discriminatory, Plaintiff explained that "it's the hostility and the way you speak to people." (Rec. Doc. 31-2, Main deposition at 132).

Ramirez-Montagut testified that prior to this email she was not aware that Plaintiff had been diagnosed with PTSD and nothing in the record disputes this assertion.[10] (Rec. Doc. 48-2, Ramirez-Montagut deposition at 216). Ramirez-Montagut replied to the email: "[I]n regard to your PTSD diagnosis, if you feel you are in need of a reasonable accommodation related to a potential disability, please contact the Office of Disability Services to file a request for a reasonable accommodation." (Rec. Doc. 48-1, Main deposition Exhibit 11).

After receiving this email, Plaintiff did speak with two individuals (Patrick and Shawna) in Disability Services about her difficulties with Ramirez-Montagut but she did not request any particular accommodation. (Rec. Doc. 31-2, Main deposition at 167; 189). Plaintiff recognized that "you can't tell someone how to behave or how to write to you, but [she] just wanted some sort of acknowledgement that [the status quo] wasn't working." (*Id.* at 167-68). Plaintiff's preferred outcome or desired "accommodation" was for "things to be less hostile." (*Id.* at 168).

---

[10] Plaintiff testified that when she returned in 2006 in the aftermath of Hurricane Katrina, she went to Tulane's disability services to self-identify herself as disabled. (Rec. Doc. 48-1, Main deposition at 219). Ramirez-Montagut learned about the 2005 traumatic incident from Dean Carole Haber over coffee at some point in time. (*Id.* at 216). But again, nothing suggests that Ramirez-Montegut knew anything about either the PTSD diagnosis or a potential disability prior to the November 10, 2014 email. (Rec. Doc. 31-2, Main deposition at 166).

Finally, Plaintiff contends that Ramirez-Montagut made unreasonable demands on her concerning a database of digitized inventory for the gallery. Ramirez-Montagut told Plaintiff that she was not doing enough to complete the project. (Rec. Doc. 31-2, Main deposition at 142). Ramirez-Montagut never attributed this to age or disability, however. (*Id.*).

Plaintiff has no direct evidence of discrimination based on age or disability. (Rec. Doc. 31-2, Main deposition at 87, 133, 142). When asked why she believed that Ramirez-Montagut's treatment of her was based on age or disability as opposed to mere personal animosity, Plaintiff explained that Ramirez-Montagut simply does not like old people. (*Id.* at 132). When asked to explain why she came to that conclusion, Plaintiff elaborated that Ramirez-Montagut is disrespectful, rude, hostile, and angry. (*Id.* at 133).

Following her termination Plaintiff filed a charge of discrimination with the EEOC claiming age discrimination, disability discrimination, and retaliation. (Rec. Doc. 48-1, Exhibit 2). The instant complaint followed.

A jury trial is scheduled to commence on July 16, 2018.

Tulane now moves for summary judgment on all claims.

## II. DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### A. Termination

Plaintiff claims that Tulane terminated her on the basis of her age and disability.

#### 1. *Age*

Under the ADEA (Age Discrimination in Employment Act), it is unlawful for an

employer to discharge an individual because of her age. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349 (5th Cir. 2005) (citing 29 U.S.C. § 623(a)(1)). Under the ADEA, the plaintiff must demonstrate that she would not have been terminated but for the alleged discrimination. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

A plaintiff producing only circumstantial evidence of discriminatory animus, must negotiate the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349 (5th Cir. 2005). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of her age. *Id.* (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate nondiscriminatory reason for its employment action. *Id.* (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003)).

If the defendant meets its burden of production, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination. *Id.* (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 ( 5th Cir. 2001); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000)). A plaintiff may meet this burden by

producing evidence tending to show that the reason offered by the defendant is pretext for discrimination. *Id.* A plaintiff's prima facie case combined with sufficient evidence to find that the employer's asserted justification is false may permit the trier of fact to conclude that the employer unlawfully discriminated. *Id.* (citing *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 148 (2000)).

Tulane contends that Plaintiff cannot satisfy a prima facie case of age discrimination because she was not qualified for the newly-created Curator and Coordinator of Academic Programming position. Again, Tulane eliminated the curator position that Plaintiff had held as part of the restructuring of the Newcomb Art Gallery given an assessment received from the AAM (American Alliance of Museums). The curator job was redefined and it is undisputed that Plaintiff's educational and scholarly background did not satisfy the requirements of the new position.

Professor Jeremy H. Jernegan, who served as Interim Director of the Newcomb Art Gallery, explained that he initiated a self-study review process through the AAM as part of attaining an accreditation with that organization. (Rec. Doc. 31-3, Jernegan affidavit). Professor Jernegan did this in 2013, and did so in consultation with the university's Provost. Receiving the AAM accreditation had been a longstanding desire of the advisory board of the Newcomb Art Gallery. Ms. Ann Woolsey, a museum consultant not affiliated with Tulane, was selected from a list of peer reviewers to conduct an analysis of the Newcomb Art Gallery, and as part of the review she interviewed all current employees, including Plaintiff. Ms. Woolsey's report recommended organizational changes in broad terms to align the Gallery with AAM best practice recommendations.

(*Id.*).

Professor Michael A. Bernstein, formerly the Provost at Tulane University, likewise described the AAM process. (Rec. Doc. 31-4, Bernstein affidavit). Professor Bernstein also explained that contemporaneously with the AAM efforts, since late 2013 Tulane had been engaged in a national search for a new director of the Art Gallery. The university hired Ramirez-Montagut for the position. In October 2014 Tulane received a detailed MAP (Museum Assessment Program) Report from Ms. Woolsey. One of the recommendations contained in a letter addendum to the report were staff changes. Specifically, Ms. Woolsey observed that the then-current staff significantly weakened the Gallery's ability to meet professional standards in collections management and disaster planning. The Provost and Ramirez-Montagut decided to implement those recommended organizational changes and as a result Tulane eliminated the curator position that Plaintiff held. (*Id.*)

Attached to Professor Bernstein's affidavit is Ms. Woolsey's October 6, 2014 letter to him and Ramirez-Montagut. (Rec. Doc. 31-4, Exh. A). Ms. Woolsey explained that the report was written in such a way to be shared with Tulane and the current staff—in other words it did not criticize individual staff members in an identifiable way. But in her letter to Bernstein and Ramirez-Montagut, Ms. Woolsey elaborated that "engagement with the collection and the exhibitions could be exponentially improved by staff with stronger academic backgrounds, who understand their base-line responsibility to keep up with their professional fields as well as cooperate with their colleagues." (*Id.*). Ms. Woolsey recommended the revision of current staff positions and expressly noted that "[i]t's *very*

important that your curator or head of academic programs has an advanced degree in order for that person to work peer-to-peer with faculty in many disciplines." (*Id.* (emphasis in original)). She added that "in this case it appears the Gallery cannot move forward on planning until it makes staff changes." (*Id.*). Ms. Woolsey did not define the specific degree or academic requirements for the new curator position—Ramirez-Montagut did that. (Rec. Doc. 31-6, Ramirez-Montagut affidavit ¶ 9).

Again, it is undisputed that Plaintiff's educational and scholarly background did not satisfy the requirements of the newly redefined curator position. Even if Tulane had extended an equivalency to Plaintiff for the degree requirements, she did not satisfy the scholarship requirements.[11]

But even assuming that Plaintiff could satisfy a prima facie case of age discrimination, Tulane has proffered a legitimate, non-discriminatory reason for eliminating the position that Plaintiff occupied. In fact, Tulane's non-discriminatory reason is well-documented with objective evidence of record. Woolsey specifically recommended that the academic credentials for the curator position be strengthened. Moreover, Woolsey's MAP report derived from an AAM study that was initiated before Ramirez-Montagut was hired.

Plaintiff's entire pretext argument vis à vis her ADEA claim is grounded on her

---

[11] Plaintiff points out that the person occupying the new curator position as of the time of Ramirez-Montagut's deposition had the same academic degree as Plaintiff. But the position that Plaintiff had held was eliminated. Plaintiff did not apply for the new curator position, presumably because she thought the effort would be futile. Plaintiff may very well have been correct regarding futility but having declined to apply for the position, she cannot complain that someone with a degree just like hers was hired for the position.

belief that Ramirez-Montagut tailored the new position's requirements so that older individuals like herself would be excluded from consideration. This specific belief is an outgrowth of Plaintiff's broader subjective belief that Ramirez-Montagut simply dislikes older persons. But the record is devoid of any evidence whatsoever to support this contention.[12] In sum, the Court finds no evidence in the record to support any causal connection between the elimination of Plaintiff's position and her age. Plaintiff cannot show that her age was the "but-for" cause of her termination. Tulane is entitled to judgment as a matter of law on the ADEA discrimination claim.

### 2. *Disability*

The ADA (Americans with Disabilities Act) prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). In a discriminatory termination action under the ADA, the employee may either present direct evidence that she was discriminated against or proceed under the *McDonnel Douglas* burden-shifting analysis explained above. *Id.* (citing *Neely v. PSEG Tex. Ltd.*, 735 F.3d 242, 245 (5th Cir. 2013)). Under that framework the plaintiff's first burden is to establish a prima facie case of disability discrimination. To prove her prima facie case, Plaintiff must prove that (1) she had a disability, (2) she was qualified for the job, and (3) there was a causal connection between an adverse employment

---

[12] Plaintiff points out that the only other job eliminated by the reorganization was held by an older person. This type of circumstantial evidence would perhaps be more helpful to Plaintiff's case were there a scintilla of evidence to support Plaintiff's claim that age was the but for cause of her termination.

action and her disability. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (citing *LHC Group*, 773 F.3d at 697).

If the plaintiff meets her burden, the defendant can then rebut the presumption of discrimination by articulating legitimate business reasons for the adverse action. *Id.* If the defendant provides a legitimate reason, then the plaintiff must offer evidence to show that the reason was a pretext for discrimination. *Id.* To carry this burden, the plaintiff must rebut each nondiscriminatory reason articulated by the employer. *Id.* (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

In the context of summary judgment, a prima facie case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment. *LHC Group, Inc.*, 773 F.3d at 694.

Plaintiff's contention that she was discharged because of her PTSD diagnosis is even more bereft of evidence than her age claim. For the same reasons given rejecting pretext with respect to the age claim, the Court finds no evidence in the record to support any causal connection between the elimination of Plaintiff's position and her disability status. Tulane is entitled to judgment as a matter of law on this claim.

### B. Reasonable Accommodation

Plaintiff's claim that Tulane denied her a reasonable accommodation in light of her PTSD diagnosis is wholly without merit. Although Plaintiff admitted in her deposition that she did not request an accommodation, she now characterizes her November 10, 2014 email to Ramirez-Montagut as a request for an ADA accommodation. Ignoring that the email was sent *after* Plaintiff had already been working for Ramirez-Montagut for three

months,[13] Plaintiff knew that Ramirez-Montagut had not interpreted the email as a request for an accommodation under the ADA because Ramirez-Montagut specifically told Plaintiff to go to the Office of Disability Services to file a request for a reasonable accommodation if she needed one. This response was objectively reasonable in light of the contents of Plaintiff's email, which never expressly asked for a recommendation, and Plaintiff even acknowledged that Ramirez-Montagut's response was appropriate. (Rec. Doc. 31-2, Main deposition at 170). It is undisputed that Plaintiff never asked for a reasonable accommodation other than entertaining a subjective desire that the workplace could be less hostile. But Plaintiff was realistic in recognizing that "you can't tell someone how to behave or how to write to you." (Rec. Doc. 31-2, Main deposition at 167-68). Tulane is entitled to judgment as a matter of law on the ADA reasonable accommodation claim.

### C. Retaliation

To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport,*

---

[13] Again, Plaintiff only worked with Ramirez-Montagut for about four months. Plaintiff explained in her deposition that she did not see Ramirez-Montagut after December 18, 2014 because of the holiday break. (Rec. Doc. 31-2, Main deposition at 203-04). Then Plaintiff started her medical leave. Therefore even if the November 10, 2014 email did somehow constitute a request for accommodation, it is unclear in what ways Plaintiff was denied an accommodation between November 10th and December 18th of 2014. Tulane granted Plaintiff all of the leave she requested in winter/spring 2015.

492 F.3d 551, 556–57 (5th Cir. 2007); *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir.1999)). If the plaintiff establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013); *LeMaire v. Louisiana,* 480 F.3d 383, 388–89 (5th Cir.2007); *Seaman,* 179 F.3d at 301). In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Id.* (quoting *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir.1996)).

 Plaintiff contends that her email to Ramirez-Montagut of November 10, 2014, in which she referenced PTSD for the first time, constituted protected activity under the ADA. The Court does not agree. If the email did constitute protected activity, however, Plaintiff nonetheless fails to create an issue of fact as to whether her PTSD diagnosis had anything to do with the decision to eliminate her job, much less that Tulane would not have eliminated her position "but for" the November 10, 2014 email.

 Plaintiff points out that on November 14, 2014, Ramirez-Montagut issued a staff counseling memo (written warning) to Plaintiff regarding her behavior and job performance. (Rec. Doc. 48-1, Exh. 12). This occurred merely four days after the PTSD email. But the warning letter did not constitute an actionable adverse employment action.

Plaintiff attempts to create an issue of fact as to causation premised on the theory of temporal proximity, *i.e.*, that the closeness in time of the November 10, 2014 email and her termination implies a cause and effect relationship. To establish a prima facie case of retaliatory discharge, the plaintiff may rely on temporal proximity between protected activity and an adverse employment action only if the two are "very close" in time. *Zamora*, 798 F.3d at 335 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Sufficiency of "closeness" is not governed by bright line rules because a time span that suffices in a case with other circumstantial evidence of retaliation may not suffice when the plaintiff has no other evidence of retaliation. *See Feist*, 730 F.3d at 454-55 (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). Courts in this circuit weigh temporal proximity as part of "the entire calculation" of whether the employee has shown a causal connection between the protected activity and the adverse employment action. *Hague v. Univ. of Tex. Health Science Ctr.*, 560 Fed. Appx. 328, 334 n.7 (5th Cir. 2014) (unpublished) (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)).

The actionable adverse employment action in this case was the termination. Plaintiff was discharged effective July 30, 2015, which was several months after the November email. In light of the complete absence of any evidence whatsoever to suggest that retaliation played any role in the decision to eliminate Plaintiff's position, the Court is persuaded that the doctrine of temporal proximity is insufficient in and of itself to create an issue of fact as to causation.

Plaintiff has not identified any protected activity related to her age.

Tulane is entitled to judgment as a matter of law on Plaintiff's claims of retaliation.

### D. Other Claims

Plaintiff contends that Tulane's motion for summary judgment is actually a partial motion for summary judgment because Tulane did not address key claims in its motion. Specifically, Plaintiff contends that she pleaded a claim that Ramirez-Montagut interfered with her ability to serve as a lecturer and curator outside of Tulane.

This claim is not cognizable under either the ADEA or the ADA. Plaintiff's complaint arises under federal law. Plaintiff seems to be alluding to a state law tort claim.

Plaintiff also contends the she pleaded a disclosure/defamation claim. Again, Plaintiff's complaint arises under federal law. Hence, the only disclosure claim cognizable in this matter would have to fall under the ADA.

Plaintiff's ADA claim under 42 U.S.C. § 12112(d) for disclosure of confidential medical information is without merit. The evidence of record as to this claim is limited to Ramirez-Montagut's testimony that she did tell other persons that Plaintiff was on sick or medical leave.[14] This does not constitute the release of confidential medical information obtained through a disability-related inquiry, which is what the statute requires. There is no evidence to suggest that Ramirez-Montagut even possessed such information.

Tulane is entitled to judgment as a matter of law on this claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 31)** filed

---

[14] Plaintiff attempts to interject inadmissible hearsay evidence by testifying as to what impression two individuals had of her illness after speaking with Ramirez-Montagut.

by The Administrators of the Tulane Educational Fund is **GRANTED.** Plaintiff's complaint is **DISMISSED** with prejudice.

May 7, 2018

                                                                          _____
                                                                          JAY C. ZAINEY
                                                                          UNITED STATES DISTRICT JUDGE